UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD SANTANA,

               Plaintiff,

v.                                         Case No:  2:15-cv-512-FtM-38CM

TGI FRIDAY'S INC.,

               Defendant.

_____

## ORDER

This matter comes before the Court upon review of Defendant's Motion to Enforce Settlement Agreement or, Alternatively, Motion to Dismiss (Doc. 18) filed on September 29, 2015 ("Motion to Enforce or Dismiss"), and Defendant's Amended Motion to Stay Proceedings and All Deadlines (Doc. 20) filed on October 16, 2015 ("Amended Motion to Stay").   On October 6, 2015, Plaintiff, who is proceeding *pro se*, filed his Opposition to Defendant's Motion to Enforce or Dismiss.   Doc. 19.   The time for filing an response to the Amended Motion to Stay has expired, although Plaintiff filed a response to Defendant's original Motion to Stay (Doc. 15) on September 15, 2015.   The motions are now ripe for review.   For the reasons stated herein, the motion are due to be denied.

## BACKGROUND

Plaintiff filed his Complaint on August 25, 2015.   Doc. 1.   The Complaint alleges a single count of employment discrimination on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*   *Id.*

Plaintiff is forty-three (43) years of age and has twenty-eight (28) years of restaurant and food service experience. *Id.* at 5. Plaintiff alleges that on March 2, 2015, he applied for a server position at a TGI Friday's restaurant ("Defendant's restaurant") but was denied the position because of his age. Specifically, the general manager of Defendant's restaurant told Plaintiff that he was "too experienced" and that the general manager does "not hire job applicants who are forty (40) years of age or older." Doc. 1 at 4. Plaintiff alleges that Defendant's discriminatory treatment of Plaintiff has caused injury to Plaintiff, including loss of wages and "benefits that he would have been entitled to in the absence of age discrimination." *Id.* at 8. Prior to filing his Complaint, on or about June 8, 2015, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"). Doc. 1 at 2.

On June 4, 2015, Plaintiff filed an action against Defendant in the County Court of the Twentieth Judicial Circuit, Lee County Florida ("state court action"). Doc. 15-1 at 5-12. The complaint in the state court action alleges three counts against Defendant: 1) negligent hiring, retention, supervision and training; 2) defamation; and 3) intentional infliction of emotional distress. *Id.* The underlying facts of the state action complaint are based on incidents that took place before Plaintiff applied for a job in Defendant's restaurant.

In his state court action complaint, Plaintiff alleged that on or about January 20, 2015, he was a guest at Defendant's restaurant. Doc. 15-1 at 6, ¶5. He ordered a meal and a beverage, which totaled $9.99 plus tax. *Id.* Plaintiff submitted $15.00

alongside his check and left without incident.   On or about February 6, 2015, Plaintiff visited Defendant's restaurant again and the restaurant's bartender and manager accused him of leaving the restaurant on January 20, 2015 without paying for his meal and drink; therefore, they demanded payment.   *Id.* at ¶6.   The state court action complaint also alleges that "[o]n May 5, 2015, Plaintiff filed an extremely similar lawsuit against the Defendant claiming the same causes of action below."   *Id.* at 7, ¶10.   Plaintiff alleges that on May 23, 2015, he visited Defendant's restaurant again, and a manager informed Plaintiff that he was not welcome at Defendant's restaurant due to his filing of a lawsuit and threatening to file an EEOC charge against Defendant.   *Id.*

On September 15, 2015, Defendant filed a Motion to Stay Proceedings and All Deadlines Pending Resolution of Related State Court Proceeding to Enforce Settlement Agreement in this action.   Doc. 15.   Defendant's motion stated that on August 26, 2015, Defendant filed a motion in the state court action seeking the court to enforce a global settlement agreement between Plaintiff and Defendant, which settled "any and all claims Plaintiff ha[d] against [Defendant]" ("state court Motion to Enforce").   Doc. 15 at 1-2, ¶¶2-3.   Defendant states that on August 10, 2015, Defendant made a global settlement offer of $500.00 to Plaintiff ("the $500 offer").   Doc. 15 at 1, ¶2.   Specifically, the e-mail sent by Defendant to Plaintiff stated the following:

> Please accept this correspondence as related to the above entitled matter. Please be advised that I have presented your $1,750.00 global settlement offer to my client, and my client has rejected your settlement offer.

Please be advised that I have been authorized to convey a one time global confidential settlement offer in the amount of $500.00 (five hundred dollars) to resolve any and all claims you may have against my client, TGI Friday's. In consideration for this global confidential settlement you will be required to execute a general release in favor of my client and agree to refrain from attending any TGI Friday's location, anywhere in the world, indefinitely. This global confidential settlement offer expires at 5:00 p.m. today, August 10, 2015. Please advise.

Doc. 18 at 6. On August 11, 2015, Plaintiff responded by stating "I accept the $500 offer." *Id.* ("the purported agreement"). The hearing on the state court Motion to Enforce was scheduled for October 13, 2015 at 9:00 a.m. Doc. 15-2 at 2.

On September 18, 2015, Plaintiff filed his Opposition to Defendant's Motion to Stay Proceedings and all Deadlines. Doc. 17. In his opposition, Plaintiff states that he filed a Notice of Voluntary Dismissal in the state court action on September 18, 2015. *Id.* at 2. In further support of his opposition, Plaintiff states that he "never agreed to settle and include his potential Federal Lawsuit (ADEA) . . . when the Plaintiff emailed the Defendant on August 11, 2015 and wrote 'I accept the [$500] offer.'" Doc. 17 at 1. Plaintiff acknowledges that the parties were engaged in settlement discussions in the state court action prior to the $500 offer of August 10, 2015. Docs. 17 at 1, 17-3 at 2. On August 6, 2015, in response to a previous offer by Plaintiff, Defendant wrote to Plaintiff asking "[p]lease advise whether your offer includes the potential discrimination suit as well," to which the Plaintiff never responded. Doc. 17 at 1. Additionally, Plaintiff states that on August 14, 2015, Plaintiff called Defendant's counsel in the state court action and informed him that his acceptance of the $500 offer did not include any potential federal lawsuit. *Id.* at

1-2.   Plaintiff included an e-mail attachment wherein Defendant's counsel in the state court action again relayed the same $500 offer as a "global confidential settlement offer" on August 19, 2015.   Doc. 17-2.   Since Plaintiff dismissed his state court action, Defendant moves this court to enforce the purported agreement and bar Plaintiff from proceeding with this lawsuit.   With the foregoing factual background in mind, the Court will assess Defendant's arguments raised in the Motion to Enforce or Dismiss and Plaintiff's responses.

## ANALYSIS

In its Motion to Enforce or Dismiss, Defendant argues that the Court has jurisdiction to summarily enforce a settlement agreement, that the purported agreement was a valid and enforceable settlement of the ADEA claim, and that Plaintiff should be required to comply with the terms of the purported agreement. Doc. 18.   Accordingly, Defendant argues that this matter should be dismissed.   *Id.* at 10.   In response, Plaintiff argues that he did not agree to settle the ADEA claim and that he did not know the purported agreement included the potential ADEA claim.   Doc. 19 at 1-2.   Plaintiff further argues that he never signed the e-mail accepting the $500 offer or any general release/confidential settlement agreement referenced in the e-mail containing the $500 offer.   Id.   Plaintiff asserts that even if he signed any settlement agreement, "he would have revoked his consent during the seven day revocation period."   Id.   In contrast, Defendant argues that this is an attempt by Plaintiff to repudiate the agreement, which he cannot unilaterally do. Doc. 18 at 8.

The purported agreement was negotiated during the pendency of the state action case in an attempt to settle the state action case and "all claims" Plaintiff may have had against Defendant.   Defendant argues that the ADEA claim falls within the "all claims" portion of the purported agreement; therefore, the ADEA claim was settled and Plaintiff is barred from bringing this lawsuit.   The Court does not make a determination on the validity of the purported agreement as to any other claims that Plaintiff may have had against Defendant.   The Court must only evaluate the purported agreement with respect to Plaintiff's ADEA claim.

Defendant cites *Ford v. Citizens and Southern National Bank,* 928 F.2d 1118, 1121 (11th Cir. 1991) for the proposition that "a district court has inherent power to summarily enforce settlement agreements entered into by parties . . . in a pending case."   Doc. 18 at 4.   *See also Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir. 1994).   These cases are inapposite here as they did not involve settlement of an ADEA claim.   Additionally, unlike in *Ford* and *Murchison*, the purported agreement was reached prior to the institution of this lawsuit and did not involve the action pending before this Court.   Further, Defendant's argument that Florida law applies as to the construction and enforcement of the purported agreement is misplaced here, where there exists a federal statute that provides a specific mechanism for assessing the purported agreement.

In 1990, Congress amended the ADEA by passing the Older Workers Benefit Protection Act ("the OWBPA"), which imposes specific requirements for waivers and releases of ADEA claims.   *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 426

(1998).   The OWBPA requires that the waiver of an ADEA right or claim be "knowing and voluntary."   29 U.S.C. §626(f)(1); *Burlison v. McDonald's Corp.,* 455 F.3d 1242, 1245 (11th Cir. 2006).   A waiver may not be considered knowing and voluntary unless, at minimum, it meets the following requirements:

> A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under this chapter;
>
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
>
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
>
> F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or
>
> (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;
>
> (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

29 U.S.C. §626(f)(1).   The implementing regulations provide additional guidance on meeting these requirements.   *See* 29 C.F.R. §1625.22.   Additionally, "a waiver in settlement of a charge filed with the [EEOC], or an action filed in court by the

individual alleging age discrimination . . . may not be considered knowing and voluntary unless at minimum," the requirements under A-E, as stated above, have been met.[1]    29 U.S.C. §626(f)(2).

In this action, the purported agreement does not comply with OWBPA in at least four respects: (1) it does not specifically refer to rights or claims arising under ADEA; (2) it does not advise Plaintiff to consult with an attorney; (3) it does not give Plaintiff enough time to consider his options; and (4) it does not give Plaintiff seven days following the execution of the agreement within which to revoke the agreement. Since the purported waiver does not conform to the statute, it cannot bar Plaintiff's ADEA claim.   See *Oubre*, 522 U.S. at 427.

Defendant relies upon general principles of state contract jurisprudence and argues that "[a]n enforceable settlement agreement exists, 'if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."   Doc. 18 at 5, *citing Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.,* 302 So. 2d 404, 408 (Fla. 1974).   What Defendant fails to note, however, is that "[t]he OWBPA sets its own regime for assessing the effect of ADEA waivers, separate and apart from contract law."   *Oubre*, 522 U.S. at 427.   If a Plaintiff's cause of action arises under the ADEA, a purported release of the ADEA claim can have no effect unless it complies with OWBPA.   *Id.* at 427.   "As a statutory matter, [a non-

---

[1] The Court is aware that Plaintiff had filed a charge with EEOC four days after he filed the state court action; however, there is no indication that the purported agreement was an attempt to settle the EEOC charge, but rather Plaintiff's potential ADEA lawsuit.

compliant] release cannot bar [a Plaintiff's] ADEA suit, irrespective of the validity of the contract as to other claims." *Id.* at 428. For the same reasons, Defendant's argument that Plaintiff could not unilaterally repudiate the agreement after he accepted to the $500 offer fails. Defendant was required to provide Plaintiff seven days to revoke the purported waiver.

In its Amended Motion to Stay, Defendant seeks a stay of this proceeding until the Court resolves the Motion to Enforce or Dismiss. Since the Motion to Enforce or Dismiss is due to be denied for the reasons stated herein, the Amended Motion to Stay is moot. Additionally, on November 4, 2015, Defendant filed a Motion for Permission to Conduct Case Management Conference by E-Mail. Doc. 22. Defendant states that Defendant's counsel is located in Tampa, Florida. *Id.* at 2. Plaintiff is proceeding *pro se* and is located in Bonita Springs, Florida. *Id.* Defendant states that given the distance between the parties and pre-scheduled commitments, it will be difficult to select a date, time, and location that is mutually convenient for the parties to travel to and attend a personal meeting to complete the Case Management Report. *Id.* Defendant also states that because Plaintiff is proceeding *pro se* in this action, e-mail communication will help avoid any confusion or disagreement over any issues discussed or agreements reached. *Id.* Plaintiff opposes this relief and has not yet filed a response.

The Middle District of Florida Local Rules state that "[t]he use of telephonic hearings and conferences is encouraged, whenever possible, particularly when counsel are located in different cities." M.D. Fla. R. 3.01(i). Both of Defendant's

concerns raised in its motion can be addressed by the use of a telephone case management conference. The parties should be able to conduct the case management conference by telephone and use e-mail communication to confirm their agreements. Upon consideration of the motion, therefore, the Court finds good cause to grant the motion in part without the benefit of a response. The parties may conduct the Case Management Conference by telephone.[2]

ACCORDINGLY, it is hereby

**ORDERED:**

1.      Defendant's Motion to Enforce Settlement Agreement or, Alternatively, Motion to Dismiss (Doc. 18) be **DENIED**.

2.      Defendant's Amended Motion to Stay Proceedings and all Deadlines (Doc. 20) is **DENIED AS MOOT.**

3.      Defendant's Motion for Permission to Conduct Case Management Conference by E-Mail (Doc. 22) is **GRANTED in part.** Defendant may conduct a case management conference by telephone with Plaintiff within seven (7) days of the date of this Order, and shall file the Case Management Report seven (7) days thereafter.

---

[2] Pursuant to the Order dated August 26, 2015 and Fed. R. Civ. P. 6(a), the parties were required to meet and prepare a Case Management Report by November 3, 2015. Pursuant to Local Rule 3.05(c)(2)(B), the parties were required to meet "regardless of the pendency of any undecided motions."

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of November,

2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record